Oral argument this morning is Appeal No. 25-2999, Pasha v. Kohler. Good morning, Mr. Maynard. Good morning. May it please the Court, this case is about whether or not Ms. Pasha received the procedural reviews and protections at a risk it requires, both during Kohler's administration of the claim and before the District Court. The record is clear that Ms. Pasha did not. Kohler committed at least three key procedural errors that deprived Ms. Pasha of the reasonable opportunity for a full and fair review that she is entitled to under law. Number one, it failed to perform a reasonable inquiry into her material and substantial job duties. Number two, it moved the target on its interpretation of the standard of disability under the plan from the initial determination to the final determination. And number three, it withheld critical information from Ms. Pasha during the course of the administrative appeal that denied her a meaningful opportunity to respond to that information. When Ms. Pasha challenged that determination before the District Court, the District Court also made two critical errors. Number one, it misapplied the standard for deciding the scope of the administrative record. And number two, it failed to adequately analyze whether the fiduciary exception to the attorney-client privilege applied to Kohler's emails with its counsel. I'd like to start by... What evidence is there that the emails with Kohler's legal counsel had any relevance to the disability determination? Given that the disability denial was, by its own language, based entirely on the absence of objective medical evidence and the opinions of medical professionals, is there any reason, do you think, to believe that the emails from legal counsel would reveal a different, unrevealed basis for the disability determination? And if not, how could they be relevant to address the only issue, which I think, you know, it's the sufficiency of the medical evidence? Well, I think absolutely the emails could provide more information. Part of the issue here is that as we stand here today before the Court of Appeals, we don't know what the content of those emails were, and neither did the District Court. That's the procedural error here. The District Court did not review them in camera? Is that correct? The court did not. And that's an important distinction, I think, with this case compared to every other case that the parties cited in their briefing, even the Tatum and Carr cases that Kohler relies on. In every one of those cases, the court is going to review communications that are potentially subject to attorney-client privilege for their content and context to determine, okay, is this a valid privilege claim, or is this something that relates to the fiduciary's administrative functions under the plan and must be produced under the fiduciary exception? So that's a part of the issue here. If we had seen, if the court had reviewed these, the court could have validly made that determination. If they were produced, there might have been additional evidence for us to argue that there was bias or misconduct that would have allowed us to go into discovery outside of the administrative record. So this is clearly, first and foremost, a procedural error that really hampered Ms. Pasch's ability to present her case before the District Court. Do you agree that if the emails were not part of the administrative record, that you can't prevail because you haven't argued the Siemens factors and Siemens test?  I would agree. Your whole focus has been on these are part of the administrative record and the fiduciary exception applies, rather than on the test that you have to meet in order to get evidence outside of the administrative record. That is correct. But I would not agree that we would not prevail based on that alone. On that issue, potentially not. How could you prevail since you haven't argued the Siemens test, misconduct, and that there's a likelihood or make a prima facie showing that there's good cause to believe this would show procedural error? We could also prevail on the underlying procedural issues related to Fuller's administration of the claim. I should have been more clear. I meant just on the email issue. I believe that's correct. If the District Court had performed the correct analysis, reviewed those documents in camera for their content and context, it's possible that the Court could have said, no, this is a valid claim of privilege here, and that we would not be entitled to those. The problem is the District Court changed the standard and applied the Siemens standard, and what that did is essentially shift the burden onto the claimant, Ms. Pasha, when the burden should have been on Kohler, who asserted the privilege. A party who asserts a privilege claim bears the burden of proving that privilege. The District Court did, on the motion to compel, the parties argued it more as a Siemens argument. At the summary judgment stage, the District Court addressed it again and addressed it as part of the administrative record at that stage. Well, I don't believe the parties did argue it under the Siemens standard. I think that's clear from the initial motion to compel. We argued it under the Cantor standard, and Kohler didn't respond and say, hey, this needs to be judged under the Siemens standard. The Court applied the Siemens standard on its own. At the motion to compel stage?  But at the summary judgment stage, the Court viewed it as part of the administrative record. The Court held at the summary judgment stage that there was a divergence of interest between the parties that would not require Kohler to produce that information. The problem with that is that the Court never actually reviewed those emails, and the Court, I don't think, can make a valid determination on a claim of privilege without actually reviewing the content and the context of those allegedly privileged communications to determine, okay, is this actually a privilege, or is this a part of the fiduciary functions? That's a part of the issue here is that the Court's got to do that analysis to weigh the varying interests of the parties here. But the question about the applicability of the fiduciary exception to a claim of privilege and whether that exception is itself subject to further exceptions, for example, as relevant here, the interests of the fiduciary and the beneficiary have sufficiently diverged based on a threat of litigation that the fiduciary exception does not apply, that issue can be decided without looking at the content of the emails because that depends on the course of conduct between the parties, the beneficiary to the plan and the fiduciary. And you had written an 18-page letter two months before the emails in question between Kohler and its counsel, essentially threatening litigation if the appeal was not successful. And so by then, the interests had diverged clearly, and so the fiduciary exception doesn't apply. That's a legal issue. It doesn't require examination of the content of the emails. Your Honor, respectfully, I would disagree because the whole purpose behind ERISA's administrative procedures is to have a non-adversarial process to resolve claims and hopefully prevent them from getting to litigation. As a part and parcel of that, a claimant has got to be able in good faith to go before an administrator after an initial denial and say, hey, we think you committed these procedural errors that might lead to this being overturned that have hampered our ability to prepare an appeal here. That is what happened here. This case is distinguishable from the Tatum case, which the district court relied on and Kohler relies on, where during the administrative process, the plaintiff said, you know, it was very clear. We're filing a class action. I'm going to have my attorney submit a demand. You know, we never said this case is absolutely going to litigation. We said we think that there are procedural errors here that would potentially not have this determination be upheld if and when it gets to litigation. In your view, when did Kohler sufficiently anticipate litigation on this record? I don't believe that there was any sufficient anticipation of litigation until after the emails at issue occurred. I don't think that there is a – I think there's a – So your letter, you don't think, put them on notice that there could be litigation here? I mean, if you look at the vast majority of the cases you've considered the fiduciary exception, they say there's always – There aren't many. There are not that many. That's true. But the vast majority of them that consider it will say there's always a threat of litigation. There's always the potential of litigation during the administrative appeal process. That's how this process works, right? But there's a letter that you sent here that was pretty specific. The letter was part of the appeal and, again, made at best passing references to litigation that could result if Ms. Pasha did not receive a full and fair review. I believe that is something that ERISA's administrative procedures require her to disclose, and that should be disclosed in good faith to try and resolve an issue outside of litigation. Do you think that issue is a close call given the dearth of information as to the exact nature of the email that you never saw? Well, it's hard to say. I don't think we can even say whether it's a close call or not. Again, I do believe that the district court has got to, in balancing the interests of the parties, review the content of those communications, and only from that can the judge then make a veiled determination, okay, I think they veiledly perceived a threat of litigation here, and they don't have to produce those emails potentially, versus, hey, this was just a communication about the normal administration of the claim. That's what the privilege log says. This is about the merits of the appeal, and this is about the contents of the final determination letter. Those are normal administrative functions that every fiduciary performs in making a claim under ERISA's administrative procedures. I would like to pivot to – You are into your rebuttal time if you want to save it. It's up to you. Well, I'll keep going for right now. Thank you.  I do want to move forward to discuss briefly some of the procedural errors that were committed as well, because I think those on their own form a good reason to reverse and remand this case. Number one, I want to focus on the moving the target argument. A big part of what Ms. Pasha was saying during her appeal process was you haven't given us sufficient rationale to understand what you're looking for and how to prepare an appeal. All they said at the initial determination was you can perform your job in a sedentary-like occupation. Now, the parties have briefed that. We think that as a matter of law is not sufficient. We state it as much. But Ms. Pasha attempted to meet Kohler at the standard that it expressed during the initial denial. She provided evidence in the form of a two-day FCE that showed after day one, she cannot sustain sedentary work for an eight-hour day. And after day two, she could not even complete the testing. When that was submitted to Kohler on appeal, their doctor who reviewed it did not disagree with the findings of the FCE. That's important. This was not a medical determination. She didn't say, okay, well, I think the evidence as a whole shows that the FCE is not valid. Kohler never disagreed with the FCE's results. What their reviewing doctor did is change the standard. She said, no, it's no longer sedentary-like. There are additional things that we're going to consider here. This is a job where you're seated. You're working remotely. You wear a headset all day. Now, that was also not a reasonable inquiry into the job because, as we saw when the job description was produced, it was much more demanding than that. She had to stay on task, answering calls as they came in, providing accurate communications to Kohler's customers, and she had to do it during her scheduled shift with only scheduled breaks. So that's an important distinction here, and I think it's important to note that's why this is a moving-the-target case in line with Holmstrom because when Kohler adopted Dr. John's report, what Kohler actually did was change the evidence that was necessary for Ms. Pasha to meet the standard for disability. Originally, it was, you need to show us that you can't perform sedentary light work. After that, it was, no, there's this highly factually specific and intensive review based on the particulars of your job. But that was never articulated before, and that's what Holmstrom stands for, the idea that you cannot reject evidence during the administrative process based on a rationale that has not been communicated to the claimant. That is an issue. In addition, I've got a minute left. I will reserve that for rebuttal. Okay, thank you. Thank you. Ms. Barocci? Good morning.  May it please the Court. My name is Danielle Barocci. I represent the appellee, Kohler. For two reasons, this Court should affirm the rulings of the District Court. The first reason is because the District Court properly denied Ms. Pasha's motion to compel Kohler to produce six privileged communications between it and its counsel regarding specific threats of litigation that were made during the administrative appeal and declining to expand the fiduciary exception to cover such communications. The second reason is because Kohler's decision to terminate Ms. Pasha's long-term disability benefits was not arbitrary and capricious. It was well-reasoned, supported by record in the evidence, and the record shows that she obtained a full and fair review here. I'm going to address the record privilege issue first because I think it frames much of the appeal. I'd like to address some of the arguments made by my friend on the other side also, and then I'll briefly explain why the benefits decision should be affirmed. You've really focused on the facts. I'm sorry. I'm sorry. Go ahead, Judge Roebner. Go ahead. Regarding the emails from legal counsel, Pasha argues that the issue here is the completeness of the administrative record, not whether it can conduct discovery outside the administrative record. If the only issue here was whether the administrative record actually includes all documents considered in the benefits determination, why would the administrative record be considered complete when it excludes emails that, by their very description, concern the merits of Pasha's appeal? So the administrative record typically consists of all of the materials that were before the administrator when it's made its decision for benefits. So that generally includes the participant's application, any medical records that were submitted in support of that application, any initial decisions by the administrator, including any support for those decisions, any appeal-related materials, reports by independent medical reviewers, and then eventually any final decision. Emails between counsel and the administrator, whether they relate to plan administration matters or not, typically are not evidence related to the underlying benefits determination. So those items typically are not a part of the administrative record. However, ERISA's regulations do allow a participant to request certain communications, and there are certain things that the plan administrators are required to provide. What are you relying on for that argument that emails are typically not part of the administrative record, especially emails that were sent before a final decision was made from the lawyer to the administrator? Because the emails don't relate to the underlying benefits determination. So the regulations say that it has to be relevant to the benefits determination. And so emails, even if they concern plan administration, don't necessarily have anything to do with whether or not the participant is entitled to benefits. They may be related to, for instance, just using the emails at issue in this case that we did, in good faith, offer to produce. Those communications concerned Ms. Pasha's right to certain requested materials. So her counsel requested from us all emails related to the administration of the plan, only after our plan administrator copied counsel on a communication. So he viewed that as the door is now open to request these communications. The communications that we did after reviewing and after researching this exception related to Ms. Pasha's request for a broad variety of information. And so the counsel provided advice to Kohler about which of those items she was entitled to and which we did not. That was advice given in furtherance of her benefit. It wasn't advice given to protect the fiduciary, and that is why we agreed to produce those. Do we have to take that on your word? You know, it's a close question, perhaps. Would you agree that there's a dearth of information as to the exact nature of the emails? No. I mean, I think that I've summarized the emails now. I mean, I think plan administration matters as defined in the Bland decision. What they say is potentially disclosable under the fiduciary exception includes communications explaining how plan terms were interpreted, advice about administering existing benefits, information tied to individual benefit determinations if purely administrative, factual summaries or data compiled for the beneficiary's benefit. And so essentially it's advice sought on behalf of beneficiaries. That last category, factual summaries or data compiled for beneficiary's benefit, that describes the emails that we did agree and did produce to Ms. Pasha in this case. However, what we refused to produce were six specific emails where advice was sought and provided on those specific threats of litigation that were made in the appeal. Now, going back to... But how do we know that? Just to follow up on Judge Robner's question, nobody, no objective person has seen these emails. We are relying on your representation that they shouldn't be part of the administrative record because they don't fall in any of the buckets that you've listed. But how can we make that determination without somebody looking at them in camera, they're not in the record? Are we just supposed to accept how you have represented them?  So regarding an in-camera review, that was never requested here. That is not required by the district court before today. Ms. Pasha never argued... I think the more significant, just in the interest of time here, the more significant question is, how are we supposed to make that determination based on this record? Well, the court here was satisfied based on the privilege log and based on the authorities we cited, which were Tatum and Carr. And under the semen analysis, you don't even have to get that far and explore those communications further if those specific allegations of bias or misconduct are not there. And there was no prima facie showing that the discovery requested would lead to information that would show some sort of procedural error. But the challenge is we don't get to that analysis if they were part of the administrative record. If they were part of the administrative record, then we go right to the fiduciary exception. We don't go to the semen analysis because that only deals with items outside of the administrative record. Well, and I think that the court undertook that analysis because Ms. Pasha argued that it was evidence related to her underlying benefits determination. But I understand the court's concern about taking your word for it. But based on analyzing the context of the situation and the underlying circumstances, the court was satisfied based on the facts of the case, the law that was cited, that there was a divergence of interests at that point. And no other allegations were made. Would you agree, forgive me, but would you agree if I thought that the threats of legal action were relatively mild? Would I agree that they were relatively mild? No. Respectfully, I would not agree with that. Ms. Pasha's appeal was, I believe, 10 pages long, single spaced. Much of it was dedicated to her underlying benefits entitlement. And that's typically what comprises an appeal in these benefits cases, is the participant is trying to show why she is entitled to the benefits. And differentiating the medical evidence and any conclusion made by an independent medical reviewer. And a big portion of her appeal here, I believe there was a title to it that I don't have in front of me, was dedicated to allegations and assertions about ERISA, excuse me, by Kohler's flawed process that it would not withstand judicial scrutiny and flat out allegations that ERISA was violated. So, at that point, Kohler had every right and entitlement to seek advice from counsel regarding those specific threats, regardless of the fact that a benefits, final benefits determination had not been made yet. And so I think that they were rightfully concerned based on those threats in that appeal and the fact that Ms. Pasha was represented by counsel at that point. Are you arguing that once a claimant threatens litigation, all future emails between a plan administrator and legal counsel will be privileged and will no longer fall within the fiduciary exception? Is that what you're arguing? To the extent that those communications relate to advice for the fiduciary's protection, yes. They will remain privileged and they are not subject to disclosure. Any other emails between the administrator and counsel regarding plan administration items, those are subject to disclosure. With the time that I have left, I think I'd like to discuss the specific violations that Ms. Pasha asserts were made in her argument that Kohler's decision was arbitrary and capricious. So, her brief asserts several issues, one of which we have asserted has been waived. It is the perfect, the claim argument. I don't plan to address that unless the panel has specific questions about that argument. So, moving on to the assertion about her job duties. So, the law only requires that we conduct a reasonable inquiry into her job duties. There's no requirement that a specific job description be circulated amongst all of the reviewers at the various levels of review. In this case, specifically after her appeal where it was noted that there was no job description, Dr. John, who was Kohler's independent medical reviewer, specifically took note of that. And her report describes all of the other information in the materials that she was provided that show what her specific job duties were. And those were, it was a collection of information, it wasn't anything, you know, one single document. And it was based on information she provided herself, information that was in her medical records, and other information that was compiled and shared amongst the reviewers. So, the district court properly found that they did make a reasonable inquiry into those job duties. And at the end of the day, when the final job description was provided to Ms. Pasha, that information was consistent. There were, I think, a few items in her job description that may have referenced travel. She was not required to travel. She has never asserted that she was required to travel. So, I would say that the court's decision to reject her argument that Kohler's decision was arbitrary and capricious on that basis is without merit. The moving the target argument, under the Holmstrom decision, it defines moving the target as when, over the course of the administrative appeals, defendant invited additional information to establish disability, but when plaintiff provided it, defendant repeatedly found that the new evidence was insufficient under new standards or expectations that had not been communicated to her. That did not occur here. We never told her we needed specific test results or testing completed. When she came back with her FCE results, our expert responded to them and just disagreed with the scope of the testing. There was no moving the target specifically as to the way Holmstrom defines it. One of the last assertions she makes is that she was prejudiced by the timing of the reports. All of the authorities on this matter provide that prejudice only occurs when that information is provided after the final determination. In this case, Dr. John's initial report was provided 18 days before the final determination, and her supplemental report responding to the FCE results was provided, I believe, four days before the final determination. It was one paragraph long, and so the district court found that she did have sufficient time to prepare a response if necessary. And I see that I'm out of time, so with that, I would respectfully request that this court affirm the rulings of the district court. Thank you, Ms. Muracki. Thank you. Mr. Maynard. Thank you. Just a few points here. You know, opposing counsel here stated that the emails that issue don't relate to underlying benefits determinations. The problem is there's no way to know that without reviewing the actual determinations. Arbitrary and capricious review is based on the administrative record, but a district court needs to know what the administrative record was in order to defer to it. That's the issue here. Regarding the procedural errors by Kohler, you know, again, arbitrary and capricious review is a deferential review, but you can't defer to a process that prejudiced the claimant because of procedural errors, and that's what happened here. And again, Kohler's counsel addressed the arguments about the delayed production of Dr. John's reports. That was absolutely prejudicial to Ms. Pasha because based on their privilege log, which is all we have to go on regarding the contents of those communications, they were already making the final determination and finalizing the decision letter before they even provided the reports to Ms. Pasha. How can Ms. Pasha have a meaningful opportunity for review if she doesn't have the reports that are the basis for the decision before the decision is being written? With that, I'll say we respectfully request this court reverse and remand the decision. Thank you very much. Thank you, Mr. Maynard. Thanks to both counsel. The court will take the case under advisement.